**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>     v. )<br>)<br>GIANTE LEE THOMAS, )<br>)<br>     Defendant. ) | Criminal No. 15-249<br>Judge Nora Barry Fischer |

## MEMORANDUM OPINION

On January 25, 2016, this Court held a hearing on the Government's Motion for Review of Detention Order [30] pursuant to § 3145 of the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*[1]  By way of background, on November 19, 2015, Defendant Giante Lee Thomas was charged with one count of possession of a firearm and/or ammunition by a convicted felon from April 20, 2015 through May 15, 2015, in violation of 18 U.S.C. § 922(g)(1).  (Docket Nos. 1, 2). The statutory penalties for the charge against Defendant include a term of imprisonment of not more than ten years.  *See* 18 U.S.C. § 924(c)(1)(A)(ii).  At the time of this alleged criminal activity, Defendant was on federal supervised release after having been convicted on guilty plea and sentenced to serve forty-two (42) months in custody and five (5) years supervised release for conspiracy to distribute and possess with intent to distribute fifty (50) grams or more of cocaine base in a form commonly known as crack and less than five hundred (500) grams of cocaine at criminal number 08-374.

The Government filed its request for detention on November 23, 2015.  (Docket No. 13).  On November 24, 2015, Defendant was arraigned before Magistrate Judge Lisa Pupo Lenihan.

---

[1] The Government has titled its motion as a review of a detention order, however, it is more properly a motion for review of a release order per 18 U.S.C. § 3145(a).

Magistrate Judge Lenihan held a detention hearing and ordered the Defendant released on unsecured appearance bond and conditions. (Docket Nos. 21-23).[2] The Government then filed a Motion to Review Detention Order (Docket No. 26), which was denied without prejudice by Order dated December 8, 2015. (Docket No. 29). On December 15, 2015, the Government renewed its Motion to Review Detention Order, attaching the transcript of hearing before Judge Lenihan as required by the Court. (Docket No. 30). Defendant requested an extension of time to file his response on January 7, 2016 (Docket No. 39), which was granted, and Defendant then filed his Response to the Government's Motion to Review Detention Order on that same date. (Docket Nos. 40, 41). The Government filed its Reply on January 11, 2016 (Docket No. 42). The Court then scheduled argument and hearing for January 25, 2016. (Docket No. 43). Defendant requested an extension of time to file a Sur-Reply, which Defendant filed as permitted on January 21, 2016. (Docket Nos. 49, 50).

After holding an evidentiary hearing on January 25, 2016,[3] (Docket Nos. 62, 63), and on request, the Court announced its findings and reasons on the record, ruling that the Defendant be detained. The Court provided the proposed Order on detention to counsel before its entry and although Defendant's counsel objected to the Court's decision to detain, she indicated that she did not have objection to the form of the Order, the Court having provided its findings in detail on the record in open court. (Docket No. 63 at 29).

I.      EVIDENTIARY HEARING

At the January 25, 2016 hearing on detention, this Court initially heard argument on the nature of the proceedings to be held and whether an evidentiary hearing would be appropriate.

---

[2] The transcript of the November 24, 2015 hearing before Magistrate Judge Lenihan is filed at Docket No. 33.

Counsel for Defendant objected to any further evidentiary hearing, without any authority in support, reasoning that the Government had already had its hearing before the Magistrate Judge, and that affording the Government a second opportunity to provide evidence and witnesses before this Court somehow was unfair to Defendant. (Docket No. 62 at 17). Defendant, however, was given a full and fair opportunity before this Court to present evidence, by proffer or otherwise, regarding the issue of detention.

On a district court's review of a detention order by a Magistrate Judge, the Court exercises *de novo* determination of the matter. *United States v. Delker*, 757 F.2d 1390, 1393-1396 (3d Cir. 1983); *see also United States v. Burgess*, 2009 WL 2038148 (W.D.Pa. July 8, 2009)(McVerry, J.). On such a review, the Magistrate Judge's decision is not accorded deference, but as further observed by the Court of Appeals for the Third Circuit in *Delker*, "[i]n most cases the district court will find it useful to consider carefully the decision and reasoning of the magistrate." *Delker*, 757 F.2d at 1395.

It is beyond purview that the district court need not but may conduct its own evidentiary hearing and assess the credibility of any witnesses testifying at such hearing in order to make its findings as to detention. *United States v. Accetturo*, 783 F.2d 382, 392 (3d Cir. 1986); *Burgess* at *1-2. In *Delker*, the district court on review of the magistrate's ruling did not merely hold argument on the matter, but instead held an evidentiary hearing, though it exercised its discretion to require defendant's counsel to provide a proffer of the witness testimony as opposed to permitting live witness testimony. 757 F.2d at 1395. The Third Circuit held that in the context of a *de novo* review of a magistrate judge's detention decision, "discretion lies with the district court to accept evidence by live testimony or proffer." *Delker*, 757 F.2d at 1396. The Court of Appeals expressed concern in

---

[3] The transcripts of the January 25, 2016 hearing are filed at Docket Nos. 62 and 63.

*United States v. Suppa,* 799 F.2d 115, 118 (3d Cir. 1986), regarding attempts to read *Delker* as permitting the Government to proceed by proffer, as 18 U.S.C. Section 3142(f)(2) specifically permits only the defendant to proceed by proffer. *Delker* went on to state that the court could not say "after reviewing the magistrate's opinion and holding a hearing, the district court erred by not combing the transcript of the hearing before the magistrate. . ." 757 F.2d at 1395. The district court also is to use its discretion to prevent the hearing from becoming a full-blown trial, weighed on the other hand with the recognition that the hearing may result in restriction of an individual's liberty for a significant period of time. 757 F.2d at 1398.

The Court of Appeals for the Ninth Court in *United States v. Koenig*, 912 F.2d 1190 (9th Cir. 1990), in following the Third Circuit's decision in *Delker* as well as other Circuits in accord, observed that the review of a detention or release order under the Bail Reform Act provides not for a form of appellate review by the district court, but rather, the motion for review is made to the court of original jurisdiction because "[t]hat court, unlike a court of appeals, is equipped to explore and redetermine factual issues if that proves necessary." *Koenig*, 912 F.2d at 1192. *Koenig* aptly observed the confusion of the term *de novo* as used in the context of a review of a magistrate's detention or release order by the district court, as opposed to its meaning in contexts where the court consider the matters anew, but only on the same record as that before the court making the underlying decision.

*Koenig* provides:

It may be too late to restore the original precision to the term "de novo," but we can at least state what we conceive it to mean in the context of a district court's review of a magistrate's detention order. Clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist. The district court erred, however, in ruling that it could review the magistrate's findings

4

under a "clearly erroneous" standard of deference. It should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference. If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate.

*Koenig*, 912 F.2d at 1192-93 (internal citations omitted).

Based on the foregoing, this Court determined that it had the discretion to, and then chose to exercise that discretion to, hold an evidentiary hearing as to the matter of whether Defendant should be detained. The witnesses were sequestered at the request of the Government. (Docket No. 62 at 4). At the hearing, this Court heard witness testimony from Probation Officer Tara Kessler, Task Force Officer David Calabro, Detective Jason Costanzo, Tonya Underwood, Curtis Ford, Jason Hill, and Lauren Thomas. (Docket No. 55). Both parties submitted exhibits, which were admitted into evidence. (*See* Government's Exhibits 1-12; Defendant's Exhibits A & B). Certain exhibits on joint motion were placed under seal given the nature of the exhibit and given references to minors and personal identifiers therein.

After counsel for both parties gave closing arguments, counsel for the Government requested that the Court issue its findings from the bench. After having carefully considered the Government's Motion to Review Detention Order [30], Defendant's response thereto [32], the Government's Reply [42], the Defendant's Sur-Reply [50], argument, evidence and witness testimony presented at the hearing before the Magistrate Judge, including the Pretrial Services Bond Report in this matter, the Magistrate Judge's decision, and argument, evidence and witness testimony presented at hearing before this Court on January 25, 2016, the Court placed its findings and ruling on the record, and granted the request for order of detention. (Docket No. 63 at 5-30).

5

At the conclusion of the hearing, Counsel for Defendant appeared to make an oral motion for reconsideration.  (Docket No. 57).   After hearing, the Court ordered briefing on the motion for reconsideration, (Docket No. 58), but Defendant filed a motion to withdraw the motion for reconsideration, (Docket No. 59), which was granted. (Docket No. 60).  The Court writes to reiterate its findings and rulings in support of its decision to detain the Defendant.  (Docket No. 63).

II.	STANDARD

Section 3142(b) provides that the Court is to grant release on bail unless it "determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  Thus, under section 3142(e), the Court is to order detention if after hearing it finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community."  Pursuant to 3142(e) a rebuttable presumption of detention may apply. Where a rebuttable presumption arises, "the defendant must produce some credible evidence forming a basis for his contention that he will appear <u>and</u> will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986)(emphasis added).  If the defendant produces credible evidence to rebut the presumption that he poses a danger to the community, *Carbone*, 793 F.2d 561, then the Government must present clear and convincing evidence that Defendant, if released on bail, would pose a threat to members of the community, in other words "that no condition or combination of conditions exist that will reasonably assure the safety of the community."  *United States v. Schenberger*, 498 F.Supp.2d 738, 741-42 (D.N.J. 2007); *Delker,* 757 F.2d at 1392.

III.	PROBABLE CAUSE DETERMINATION

The first matter for determination on review of a detention or release order is whether there is probable cause to believe the defendant has committed the offense charged in the indictment. *United States v. Suppa*, 799 F.2d 115 (3d Cir. 1986). That is, whether there is probable cause to believe the Defendant was a convicted felon in possession of a firearm and/or ammunition, namely a 40 S&W caliber semi-automatic Springfield Armory pistol, ten (10) rounds of 40 S&W caliber ammunition and one (1) round of 9mm caliber ammunition. (Docket No. 1 at 1 and 2). Probable cause in this matter exists for multiple reasons. First, and as indicated in *Suppa*, the Court can and did find probable cause based on the grand jury's return of an Indictment. 799 F.2d 115 at 119 ("an indictment is a sufficient substitute for a preliminary hearing to establish probable cause."); *see also United States v. Gibson*, 481 F. Supp. 2d 419, 422 (W.D.Pa. 2007) (citing *Suppa*). (Docket No. 63 at 5). Second, the testimony of both Probation Officer Tara Kessler and Tonya Underwood, whom the Court found credible, likewise established probable cause as to possession of the firearm. (Docket No. 63 at 5-9, 37-38, 44-45, 73, 106-108; Ex. 3[under seal]). Third, Task Force Officer Calabro of the Bureau of Alcohol, Tobacco and Firearms testified that the firearm had passed through interstate commerce. (Docket No. 62 at 92-95); 18 U.S.C. § 922(g).

Probation Officer Tara Kessler, Defendant's present supervising officer, testified that on May 11, 2016, she received a voicemail message indicating that Defendant was in possession of a firearm and where the firearm would be located, but the caller did not provide her name or number. (Docket No. 62 at 38-40, 104, 106; Exs. 7, 9; Docket No. 33 at 6). It was determined that the message had been left by Ms. Tonya Underwood, Defendant's prior girlfriend. (Docket No. 62 at 42, 104, 105, 114). Ms. Underwood also admitted that she left the message and that she may have called the police regarding the matter. (Docket No. 62 at 104, 140). Officer Kessler called Ms. Underwood to

further discuss the matter, (Docket No. 62 at 51-52, 104), and as a result of the phone call and follow up discussion with Ms. Underwood, probation searched Defendant's residence on May 15, 2015 and found the firearm precisely where Ms. Underwood had indicated it would be located. (Docket No. 62 at 43-46; Ex. 3[under seal]).

After hearing the recorded phone message, the Court found that Ms. Underwood was crying on the message left with probation regarding the gun and its location. (Docket Nos. 62 at 40; 63 at 15; Ex. 9). Ms. Underwood, who has a tenth grade education and works full-time in the nursing field, testified that she spoke with Defendant by phone on May 10, 2015, Mother's Day, and went to his residence. (Docket No. 62 at 43, 52, 105, 131). Ms. Underwood admitted to being in an "on and off" again relationship with Defendant, (Docket Nos. 62 at 135-36; 63 at 15), that she was angry at Defendant regarding the presence of another woman on May 10, 2015, (Docket No. 62 at 52,116), and testified that once there, she observed the firearm in the Defendant's hand as he showed it to her and she observed the location where it was kept hidden in a plant atop a bookshelf near the door. (Docket No. 62 at 43, 104, 106, 108, 115, 127, 132-33). She testified that when Defendant displayed the firearm to her as he held it in his hand, he did not threaten her with it at that moment and that she did not know if it was loaded. (Docket Nos. 62 at 43, 108, 116; 63 at 16). She testified that she left after Defendant told her forcefully to leave. (Docket Nos. 62 at 52-53, 109, 116, 131-33; 63 at 16).

The photographic evidence and testimony depicted the plant in which the handgun was hidden on top of the bookshelf located near the entrance to the residence. (Exs. A & B, 6A,[4] Docket 33 at 14, and Docket. No. 62 at 44-45, 70-72). The Court observed that as depicted the location of the weapon was readily within reach of Defendant at his residence. The Court notes as well that in

addition to the firearm and ammunition, the inventory from the search produced additional weaponry that included a cane with a ram head handle concealing a sword and a "Security Plus" stun gun (or taser). (Docket Nos. 62 at 74; 63 at 15, 20; Ex. 3[under seal]).

IV.    REBUTTABLE PRESUMPTION OF DETENTION

Turning to the next matter for decision, this Court found that a rebuttable presumption was established under 18 U.S.C. § 3142(e)(2) "that no condition or combination of conditions will reasonably assure the safety of any other person and the community." (Docket No. 63 at 6).    To rebut this presumption of detention, Defendant must produce some credible evidence forming a basis for the Court to find that he will appear <u>and</u> will not pose a threat to the community. *Carbone*, 793 F.2d at 560.  This Court acknowledged that the evidence presented on the issue of Defendant's future appearance was mixed. (Docket No. 63 at 6).    Although there was evidence in the record that Defendant previously had failed to appear regarding various court matters, and also of his previous flight from police, Defendant's evidence did show that he made recent appearances before this Court in the present matter and before Chief Judge Joy Flowers Conti in the matter at 08-cr-374. (*Bond Report*; Ex. 4[under seal]; Docket No. 62; Criminal No. 08-374, Docket No. 1095**).**  Defendant also produced some credible evidence that he currently would not be a flight risk, which rebutted the presumption as to the risk of flight.  (Docket No. 63 at 14).

In addition to the risk of flight consideration, a court must also determine whether Defendant has produced credible evidence as to risk or threat to an individual or the community.  *See United States v. Shatzman*, 2014 WL 3565997 *1 (W.D.Pa. July 18, 2014)("Thus, the question is whether the defendant presents *either* an unacceptable risk of flight or a danger to others.").  Based on the

---

[4] Unless specifically delineated, references to exhibits are to exhibits submitted into evidence at this Court's hearing

evidence presented, in this Court's estimation Defendant did not rebut the presumption as to risk or threat to the community. This Court is particularly troubled by the evidence as to Defendant's threat to the community, in consideration of his extensive criminal history, the nature of that criminal history, and a threat specifically to Ms. Underwood. (Docket No. 63 at 14). Indeed the statutory language includes "any other person." 18 U.S.C. § 3142(e)-(g). Testimony by Ms. Underwood, found credible by this Court, showed that Defendant had previously brutally beaten her, and that she had taken steps to request protection from the Government and to protect her daughter by sending her out of town shortly after the detention hearing before this Court. (Docket No. 63 at 14-16, 128-29). Her fear was not only real and palpable, it was reasonable in light of past experience and the fact that she had been the one who, now known to Defendant, called probation to inform them of the location of the firearm that is the subject of this criminal matter. (Docket No. 63 at 14-16).

V.      CLEAR AND CONVINCING EVIDENCE THAT THERE IS NO CONDITION OR COMBINATION OF CONDITIONS THAT WILL REASONABLY ASSURE THE SAFETY OF THE COMMUNITY

Regardless of whether or not the Defendant was able to rebut the presumption as to risk to any other person or the community, this Court further found that the Government presented clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community, and therefore, pretrial detention is appropriately ordered in this case. *Gibson*, 481 F.Supp.2d at 419, 423 (W.D.Pa. 2007) (quoting 18 U.S.C. § 3142(f)) ("If the presumption is rebutted, the facts employed to support a detention must 'be supported by clear and convincing evidence.'"); (Docket No. 63 at 6).

on January 25, 2016.

In reaching its decisions, this Court conducted an independent examination of the record evidence, including the evidence before the Magistrate Judge, (Docket No. 63 at 5, 7), and balanced the four factors set forth under 18 U.S.C. § 3142(g)(emphasis added):

    a.    The nature and circumstances of the offenses charged;

    b.    The weight of the evidence against the person;

    c.    The history and characteristics of the person; and,

    d.    The nature and seriousness of the danger **to any person** or the community that would be posed by the defendant's release.

On balance, the evidence presented favored the Government on each of these cited factors. (Docket No. 63 at 7).

### A. Nature and Circumstances of the Offense Charged

In considering the nature and circumstances of the offense charged, § 3142(g)(1) specifically includes whether the offense involved a firearm. Defendant has been indicted for a very serious offense. (Docket No. 63 at 7). As an individual previously convicted of drug trafficking in cocaine and crack cocaine, conviction for the possession of a firearm by him may result in the imposition of a sentence of up to ten years of imprisonment. (Docket Nos. 1, 2); *see* 21 U.S.C. §§ 922(g)(1) and 924(a)(2); *United States v. Tyson*, 2008 WL 45745 at * 5 (E.D. Pa. January 2, 2008)(noting that felon in possession of a weapon is a serious crime and whether crime involved a firearm to be considered). As such, this factor weighs in favor of detention.

### B. Weight of the Evidence Against the Person

The evidence presented by the Government at the hearing before this Court appears to be strong regarding the instant firearm offense and the danger that Mr. Thomas poses to the community

generally and the danger he poses to Ms. Underwood specifically. As discussed *supra*, the testimony of Officer Kessler regarding Defendant's possession of the firearm was corroborated by Ms. Underwood. Regarding past violence against Ms. Underwood, the Court found Ms. Underwood to be credible and to be in fear as she is the one who called the Probation Office regarding the possession of the weapon by Defendant. (Docket No. 62 at 109-110; Docket No. 63 at 14-17).

Interestingly, both parties cited to the DNA and fingerprint analysis on the firearm and ammunition, which was inconclusive. (Docket No. 63 at 8). Defense counsel argued that the DNA and fingerprint analysis did not affirmatively connect Defendant to the firearm and ammunition, and there were others who also had access to the weapon and may have had possession at times, (Docket No. 63 at 8; Exs. 11[under seal](fingerprint analysis)], 12[under seal](DNA analysis),[5] however, Defendant's possession of the firearm also was not ruled out by these reports. Ownership or sole possession of the firearm is not a required element as § 922(g) prohibits "the felon from knowingly possessing his (or another person's) guns." *Henderson v. United States*, 135 S.Ct. 1780, 1784 (2015). The eyewitness testimony regarding Defendant's possession of the weapon, which the Court finds credible and strong, provided evidence of physical possession of the firearm in Defendant's own hand, (Docket Nos. 62 at 106-108; 63 at 9), and therefore, these particular reports do not cause the Court any hesitation.

Moreover, the Probation Office was able to verify the information as provided by the eyewitness, discovering on subsequent search the weapon at the very location specified by the eyewitness. (Docket No. 62 at 38, 106-108; 63 at 9; Ex. 3[under seal]). As testified to by Officer Kessler, because Defendant was originally released on supervision in 2011, prior to his release,

Probation conducted an interview regarding whether there were weapons at the place to be his residence on initial release with his cousin Candice Thomas. (Docket No. 62 at 35-37). They were informed incorrectly that there were no weapons at the residence. (Ex. 3[under seal]). At some point while on supervised release, Defendant had moved from that residence, but was to return to live with Candice Thomas on or about April 20, 2015, and then was placed on house arrest at that residence. (Docket No. 62 at 57). Like before, Probation on April 16, 2015 again inquired whether there were firearms at the residence, with Candice Thomas assuring Probation there were none at the residence. (Docket No. 62 at 36-37, 60). Probation also checked government records regarding firearm registration in attempts to verify that there would be no weapons at the residence, and the records did not reveal any registrations for that address or Candice Thomas. (Docket No. 62 at 37).

Defendant argued that his cousin, Candice Thomas, with whom he was living at the time of the search on May 15, 2015, (Docket 33 at 10, 12), had purchased the weapon for herself from a neighbor. (Docket 33 at 13; Docket No. 63 at 8; Ex. 2c [under seal] at 5-7; Docket No. 62 at 209-210). The Government countered that Candice Thomas obtained the firearm at or about the same time that Defendant was being released on supervision from incarceration on the cocaine and crack cocaine drug trafficking charges. Despite the claim that Candice Thomas owned the weapon, she admittedly had never fired it or any other weapon. (Ex. 2b[under seal] at 8; 2c[under seal] at 8). This Court did not find Candice Thomas to be forthright regarding the firearm. (Docket No. 63 at 18). As stated above, the crime with which Defendant is charged is *possession* of a weapon by a felon, and not unlawful ownership of that weapon. Thus, the claimed ownership of the weapon by another is of no moment.

---

[5] The analysis likewise did not appear to affirmatively connect the alleged true owner of the firearm, Candice

Overall, while recognizing that Thomas is presumed innocent of the charged offenses, as ably argued by his counsel, (Docket No. 63 at 4); *see* § 3142(j), the weight of the evidence against him as presented by the Government to this point is strong and favors pretrial detention.

C.    *History and Characteristics of the Defendant*

With respect to Defendant's history and characteristics, this Court considered the Defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct history relating to drug or alcohol abuse, criminal history and record concerning appearance. "The Court is further guided by section 3142(g)(3)(B)[,] which counsels the court to consider 'whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.'" *United States v. Atkins*, 2015 WL 4920831, at *6 (W.D.Pa. August 18, 2015) (quoting 18 U.S.C. § 3142(g)(3)(B)). This factor also favors detention. (Docket No. 63 at 9). At the outset, the Court observes that at the time the search revealed the firearm at Defendant's residence, Defendant was on supervised release for the drug trafficking offense at 08-cr-374. An additional condition of supervised released had been imposed on Defendant, which prohibited contact with Ms. Underwood as a result of an assault arrest in 2014, (Criminal No. 08-374 Docket Nos. 1024, 1025), and those conditions were further enhanced placing him on home detention with electronic monitoring for two months and at the time of the search by order dated April 9, 2015 due to his admitted supervised release violations for the use of marijuana and association with a known felon as part of the April 6, 2015 DUI arrest. (Docket No. 63 at 13; *Bond Report*; Ex. 4[under seal]; Criminal No. 08-374 Docket Nos. 1043, 1044). Thus, §

Thomas, to it.  (Ex. 12[under seal]).

3142(g)(3)(B) argues in favor of detention.

Given the considerations under § 3142(g)(3)(A), this Court found that Defendant had produced some evidence of the potential to return to a stable and law-abiding life. (Docket No. 63 at 10-11). Defendant is thirty-three (33) years old, is a lifelong resident of Western Pennsylvania and has his GED. (*Bond Report***;** 63 at 9). He has never been married and has six (6) children from four (4) previous relationships. (Docket Nos. 62 at 86, 178**;** 63 at 9-10; *Bond Report*; Ex. 4[under seal])). His children range in age from twelve (12) to seventeen (17), and reside in the area. (Docket Nos. 62 at 86**;** 63 at 9-10; Ex. 4[under seal]). He maintains a good relationship with his children except for one of his daughters, regarding whom he previously was charged with assault. (Docket Nos. 62 at 96**;** 63 at 10, 20; Ex. 5[under seal]). He only has lived with his cousin Lauren Thomas since on or about September 25, 2015, as he previously resided with his other cousin Candice Thomas, at whose home the firearm and ammunition were found on Probation's May 15, 2015 search. (Docket 33 at 25-26; Docket No. 62 at 60, 174, 184; Ex. 3[under seal]). Unlike Candice Thomas, Lauren Thomas readily disclosed that she had a firearm and that such would be removed prior to Defendant living with her. (Docket 33 at 9). Lauren Thomas, who has some college education, holds down a full-time job, and owns her home, testified that Defendant helps her out with baby-sitting and preparing meals, and has been a reliable member of her household. (Docket Nos. 62 at 175-77, 179-81, 186, 63 at 11). The Court found Lauren Thomas generally credible, but noted as well that as Defendant helps her out she presumably has bias in favor of Defendant. (Docket No. 63 at 11).

Defendant did not appear to have a significant history of drug abuse, having tested negative for over seventeen screens, with just one positive screen for marijuana on April 8, 2015. Defendant

readily admitted to probation that he had smoked marijuana as charged in state court on April 6, 2015 for DUI. (Docket No. 62 at 56, 59, 87; Docket No. 63 at 12).

Notably, Defendant has had significant gaps in lawful employment, outside of the time during which he was incarcerated. (*Bond Report*). Defendant for a time drove for Uber. (Docket No. 62 at 54). Mr. Hill testified that Defendant was reliable as an Uber driver, which is how they met. (Docket No. 62 at 161). Mr. Ford, Defendant's cousin, testified that Defendant regularly would give him rides to work for pay. (Docket Nos. 62 at 144, 149**;** 63 at 19). Beginning in the fall of 2015, Defendant worked full-time at night for Omex, a commercial cleaning company. (Docket No. 62 at 54, 75, 76). The Court did find positive his most recent work history for Omex as Omex reported favorably to probation regarding his work performance. (Docket No. 62 at 75-77; 63 at 12). His driver's license, however, was suspended as of January 19, 2016, as a result of the DUI. His position at Omex involved driving the work vehicle, which no longer could be permitted, but Omex was aware of that and willing to keep him as an employee. (Docket Nos. 62 at 76, 63 at 12).

Defendant's prior criminal history is significant. (Docket No. 63 at 13). In September of 2009 at *United States v. Thomas*, Criminal No. 08-374, Defendant was convicted on guilty plea of conspiracy to distribute and possession with intent to distribute five (5) kilograms or more of cocaine and fifty (50) grams or more of crack cocaine in violation of 21 U.S.C. § 846, for which he was sentenced to forty-two (42) months imprisonment with a five (5) year term of supervised release. Defendant was released on supervision on November 21, 2011. As referred to previously, while on supervised release at 08-cr-374, and in addition to the alleged instant offense, Defendant was charged with assault, harassment and criminal mischief for conduct on June 14, 2014, with unauthorized driving of a vehicle at the airport for conduct on July 18, 2014, and with three counts of driving

under the influence of alcohol or controlled substances ("DUI") for conduct on April 6, 2015. (*Bond Report* at 7-8; Criminal Case No. 08-374, Docket Nos. 1024, 1025, 1043, 1044, 1047, 1072). As a result of the assault charges involving Ms. Underwood, Defendant's conditions were modified on July 7, 2014 to prohibit contact with her, (Criminal No. 08-374 Docket Nos. 1024, 1025), which he apparently ignored and which eventually led to the May 15, 2015 search. His conditions were again modified on April 9, 2015 to include a two month period of home detention as a result of his arrest for DUI, which term commenced on April 20, 2015, and which also involved his association with Shari Williams, another felon on federal supervision. (Criminal No. 08-374 Docket Nos. 1043, 1044; Docket 33 at 17).

Undeterred by violations and additional conditions, Defendant once again found himself facing supervised release violations when he was arrested May 15, 2015 as a result of probation finding the firearm on search of his residence giving rise to the instant prosecution. The supervised release violation for the firearm subsequently was withdrawn at 08-cr-374. (Criminal No. 08-374: Docket No. 1085**).** On September 25, 2015, Defendant stipulated to certain of the supervised release violations at 08-cr-374, regarding his association with a known felon, namely Shari Williams, and his unlawful possession and use of a controlled substance, namely marijuana, which came to light as a result of his DUI arrest. (Docket No. 1084, 1086). Chief Judge Joy Flowers Conti revoked his term of supervised release, sentenced him to time served as Defendant had been in custody since May 15, 2015 from the time of the probation search of his residence, and sentenced him to a three (3) year term of supervised release for the stipulated to violations. (Docket 33 at 19-21; Case No. 08cr-374: Docket No. 1086). Subsequently, the Government sought to pursue supervised release violation for Defendant's DUI as it had withdrawn those allegations prior to the September 25, 2015

17

Judgment. (Docket No. 1088 at 2). Defendant then moved to dismiss the attempt to reassert violations in 08-cr-374 for conduct occurring prior to the judgment as that judgment provided for a new term of supervised release of three (3) years, and thus, under 18 U.S.C. § 3583(h) and (i) and *United States v. Merlino*, 785 F.3d 79 (3d Cir. 2015), (Case No. 08-cr-374: Docket No. 1099 at 1-2), the court lacked jurisdiction regarding the allegations. The court granted the defense motion in 08-cr-374 and dismissed these violations. (Case No. 08-cr-374: Docket No. 1102).

Defendant's criminal history dates back to Defendant's teens. In sum, Defendant has convictions and adjudications for disorderly conduct (multiple), fleeing or attempting to elude police (multiple), reckless driving, possession of marijuana, driving under the influence, unauthorized driving of an Uber at the airport, and driving under the influence of a controlled substance. (*See Bond Report*; Ex. 4[under seal], Pre-Sentence Investigation Report at *United States v. Thomas*, Criminal No. 08-374; Ex. 5[under seal]). The instant offense, as well as the offense and conviction for unauthorized driving of a vehicle at the airport, and the offense and conviction for driving under the influence of a controlled substance on April 6, 2015, resulting in two months of home detention, (Docket 33 at 16), all occurred while Defendant was on supervised release for the drug trafficking charges at 08-cr-374, and the firearm offense occurred while on home detention. At the January 25, 2016 hearing, Mr. Ford readily testified that he is a convicted felon and associates with Defendant, despite the condition to the contrary as part of his supervised release. (Docket No. 62 at 151). Defendant, as discussed *supra*, also associated with Ms. Williams, a felon on supervision, (Docket No. 62 at 73, 86), while he was on supervised release, and drove with her while under the influence of marijuana, which not only is contrary to his conditions of supervised release, but also poses a risk to the community. (Docket Nos. 33 at 15; 62 at 61, 64; 63 at 18, 24-25; Ex. 3[under seal]). Mr. Hill

testified that Defendant provided him with a male supplement, identified as Viagra on text messages between the two, despite that Mr. Hill did not have a prescription for the drug.  (Docket Nos. 62 at 161-162**;** 63 at 19, 23).  Thus, the Court found in addition to his significant criminal history, that Defendant has shown a lack of respect for conditions, for which there is ample evidence in the record.

   Perhaps most troubling, Defendant has a history that includes arrest, *see Delker*, 757 F.2d at 1400 (appropriate to consider arrest history in detention decision), for assault of his girlfriend, Ms. Underwood, arrest for assault of his own minor child, which included false identification given to authorities, and that also includes a Final Order entered against him in another matter for protection of the mother of one of his children from his abuse. (Docket No. 62 at 64, 96; 63 at 20, Ex. 5[under seal]; Ex. 10c[under seal], Court of Common Pleas of Allegheny County, Family Division Docket No. 01-05869-002, October 8, 2002 Final Order on Protection from Abuse, September 30, 2002 Verified Petition for Protection from Abuse).  As to the minor, Officer Costanzo testified that he was involved in the investigation and swearing of the criminal complaint and interviewed the three-and-a-half year old victim, but that the charges were later dismissed due to a Speedy Trial Act violation. (Docket No. 62 at 96-102).

   Specifically as to Ms. Underwood, Defendant was charged with committing simple assault, harassment, and criminal mischief on June 14, 2014, while on supervised release, and as a result, the Court in 08-cr-374 modified Defendant's conditions of supervision that he not have contact with Ms. Underwood. (Docket No. 33 at 17-18; *Bond Report*).  Despite these conditions, as with other conditions he appears to have ignored, he continued to have contact with Ms. Underwood.  (Docket Nos. 22 at 12-13, 62 at 105).  Although the underlying criminal charges were eventually withdrawn,

Ms. Underwood testified as to the disturbing details of the incident, and this Court found her testimony to be credible. Ms. Underwood appeared very nervous to testify against Defendant and testified only pursuant to subpoena. (Docket No. 62 at 103).

Ms. Underwood described that Defendant beat her up, punched her face, threw her and gave her scars on her face, with the beating resulting in her blacking out. (Docket Nos. 62 at 83, 84, 105, 110; 63 at 16).[6] Despite the beating, she also testified that she still had feelings for Defendant. (Docket Nos. 62 at 113; 63 at 16). On direct, she testified that she was afraid of Defendant and expressed concern that Defendant knows where she lives as he helped her to move into her present residence. She took steps to seek protection from the government and to send her daughter out of town for fear concerning her safety. (Docket Nos. 62 at 109, 135; 63 at 17). Admittedly, when asked on cross-examination if she was afraid, she answered "no" after pausing, but the Court was troubled as to the truth of that response, finding the prior responses entirely credible and finding her demeanor on cross-examination to have changed. (Docket No. 63 at 16). Ms. Underwood reasonably was in fear of Defendant based on her past experiences with him and that she had reported his possession of the firearm, the subject of the instant indictment, which was now known to him. Ultimately, this Court found that the Government showed by clear and convincing evidence that Defendant is a risk to both the community and to Ms. Underwood specifically. (Docket No. 63 at 17).

As stated *supra*, Defendant has a history of non-appearance in family law matters as well as regarding criminal matters, but more recently had reported for his federal court appearances. (*Bond*

---

[6] The Court rejects the notion that perhaps Ms. Underwood did not remember the assault by Defendant correctly as she "did blackout." (Docket No. 63 at 22). As observed by the Court, rather than calling the accuracy of her observations as to the assault into question, it tends to show instead the severe nature of the beating and the violence

*Report* in 15-249; Ex. 4[under seal]; Ex. 10b[under seal] [Court of Common Pleas of Allegheny County, Family Division Docket No. 05-02979, Orders dated March 13, 2006, Order dated May 18, 2005, Order dated April 26, 2005]; Ex. 10c[under seal][Court of Common Pleas of Allegheny County, Family Division Docket No. 01-05869-002, Orders dated June 24, 2003]).

Clearly, Defendant has a history of engaging in unlawful activity while on supervised release, including ignoring several of his conditions, associating with known felons (Docket No. 62 at 65, 66), illegal drug use, unlawful activity (DUI, weapon possession, providing Viagra to others), that he have no contact with Ms. Underwood after his assault of her (Docket No. 62 at 56-57, 64-65; Criminal No. 08-379: Docket Nos. 278, 1025, 1044). He also drove the Uber illegally at the airport, for which he was charged and to which he pled guilty though he failed to pay the fine, resulting in the issuance of an arrest warrant. (Docket No. 62 at 65, 67-69; Ex. 4[under seal]; *Bond Report*). Overall and in the Court's estimation, Defendant's history and characteristics weigh in favor of detention.

### D.  *Nature and Seriousness of the Danger to Any Person or the Community*

The fourth and final factor, the nature and seriousness of the danger to any person or the community, likewise favors pretrial detention in this case. *See* 18 U.S.C. § 3142(g)(4). First, Defendant has been convicted for drug trafficking cocaine and crack cocaine and is now charged with being a felon in possession of a firearm. Drug and firearm offenses are "frequently equated with danger to the community," *United States v. Coleman,* 777 F.2d 888, 893-94 (3d Cir. 1985) (considering defendant's prior drug conviction in context of Bail Reform Act); *Tyson*, 2008 WL 45745 at * 5 (E.D. Pa. January 2, 2008)(noting that felon in possession of a weapon is a serious

---

of Defendant. (Docket No. 63 at 22).

crime and whether crime involved a firearm to be considered); *United States v. Woodson*, 2012 WL 70658 (D.Del. January 9, 2012) (detention of alleged felon in possession of a firearm with prior felony convictions, evidence of violence and evidence of violations showing that defendant was "non-amendable" to supervision); (Docket No. 63 at 14). As to Ms. Underwood, the Court specifically found Defendant posed a substantial risk of danger. (Docket No. 63 at 14, 17). It is of note that despite the assault attested to by Ms. Underwood and the condition that he not have contact with her, Defendant continued such contact, including the occasion on which he displayed to her the firearm. Defendant's flagrant and repeated disregard of conditions likewise convinced the Court that he poses an unacceptable risk to the community. Therefore, this factor weighs convincingly in favor of detention.

In sum, this Court found clear and convincing evidence that Defendant poses a danger to the community and to Ms. Underwood, and that no condition or combination of conditions can ensure their safety.

VI.    CONCLUSION

On review of the Magistrate Judge's decision on detention and release order, this Court found probable cause and that a rebuttable presumption of detention applied. Although it determined that the presumption as to risk of flight was rebutted, it found that the presumption as to danger to anyone or the community was not. Moreover, the Court found, after weighing the relevant factors, that the Government proved by clear and convincing evidence that no condition or combination of condition will reasonably ensure the safety of any other person and the community. Accordingly, and for all of the foregoing reasons, Defendant Giante Lee Thomas was ordered detained pending trial on the charge at count one of the indictment for possession of a firearm and/or ammunition by a convicted

felon, in violation of 18 U.S.C. § 922(g)(1). An appropriate order was entered on January 25, 2016.

(Docket No. 56).

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf:  All Counsel of Record

      Giante Lee Thomas (USMS # 30168068)  c/o Linda Cohn, Esquire